[No. B067642. Second Dist., Div. Seven. Nov. 22, 1993.]

In re DANIEL R., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
DANIEL R., Defendant and Appellant.

## COUNSEL

Susan D. Shors, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Thomas A. Brady and Jeffrey M. Bryant, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**JOHNSON, J.**—The central issue in this appeal is whether the crime of assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1)) is a lesser and

necessarily included offense of willfully and maliciously discharging a firearm at an occupied vehicle (Pen. Code, § 246).[1] We hold assault with a deadly weapon is not necessarily included in the offense of discharging a firearm at an occupied vehicle. We therefore reverse the adjudication of wardship in this case.

## FACTS AND PROCEEDINGS BELOW

Defendant, Daniel R., was charged in a petition pursuant to Welfare and Institutions Code section 602 alleging a violation of Penal Code section 246 by willfully and maliciously discharging a firearm at an occupied vehicle.[2] Defendant denied the allegation and the matter was submitted to the court for adjudication based on the police reports and argument of counsel.[3]

The facts gleaned from the police reports are as follows: On July 20, 1991, Jose Ramos and Mark Ochs were passengers in a car driven by Gabriel Valles. Shortly after midnight Valles saw a 1989 Ford Mustang pass by going in the opposite direction. Defendant was the driver of the Mustang and defendant's brother, Jose R., and Garrick Alfaro were passengers. Valles saw the Mustang make a U-turn and follow his car.

Valles turned his car onto another street and defendant followed. Defendant fired at Valles's car with a BB gun shattering the rear window. Valles attempted to take evasive action but defendant's car followed closely behind. Finally Valles stopped his car and defendant drove on.

---

[1]Penal Code section 246 provides:

"Any person who shall maliciously and willfully discharge a firearm at an inhabited dwelling house, occupied building, occupied motor vehicle, occupied aircraft, inhabited housecar, . . . , or inhabited camper, . . . , is guilty of a felony, and upon conviction shall be punished by imprisonment in the state prison for three, five, or seven years, or by imprisonment in the county jail for a term of not less than six months and not exceeding one year.

"As used in this section, 'inhabited' means currently being used for dwelling purposes, whether occupied or not."

All further statutory references are to the Penal Code unless otherwise indicated.

[2]The petition initially charged defendant with discharging a firearm at "an inhabited house car." The petition was amended to delete the words "house" and "car" and to insert in their place the word "vehicle." Consequently, the petition as sustained alleged the discharge of a firearm "at an inhabited vehicle" instead of "at an occupied vehicle" as the statute defines the violation. This oversight appears to be a clerical error in amending the petition. However, this variance is not material to our analysis of the issue raised in this appeal.

[3]Before accepting defendant's submission of his guilt or innocence on the basis of the police reports the trial court failed to advise him of his constitutional rights to a jury trial, to confront and cross-examine witnesses and against self-incrimination. Nor did the trial court advise defendant of the nature of the charge and the potential penal consequences if the petition was sustained. Failure to so advise a defendant in these circumstances is plain error. (*Bunnell* v. *Superior Court* (1975) 13 Cal.3d 592, 604-605 [119 Cal.Rptr. 302, 531 P.2d 1086]; *People* v. *Wright* (1987) 43 Cal.3d 487, 495 [233 Cal.Rptr. 69, 729 P.2d 260].) However, in light of our disposition of this appeal we need not decide whether the trial court's omissions constitute reversible error.

Defendant handed the BB gun to Alfaro and Alfaro threw the gun out of the window.

Police officers followed the Mustang and confronted its occupants when defendant parked it at Alfaro's house. Although he later said he knew nothing about a broken window, at the scene Jose R. told an officer his brother, defendant, had fired the BB gun. A witness observed the BB gun being tossed from a Mustang as it passed at a high rate of speed. Police officers recovered it from the location indicated by the witness.

In a search of the Mustang police officers recovered a brown gun case, a carbon dioxide gas cartridge, a black box containing BB's, two cans of gun oil and four "speedy" loaders.

At the police station defendant told the officers he had borrowed the BB gun from a friend. Defendant stated earlier in the evening Valles and his friends had painted the Mustang with a paint gun and he wanted to "get even." Defendant explained he and the others were just driving around when they happened onto Valles's car. Defendant said he fired "aimlessly" at Valles's car until he emptied the BB gun.

Two rounds struck the rear window and one round struck the metal trim on the outside rear window.

After reading the police reports and hearing arguments over a period of two days, the court agreed with defense counsel defendant could not be convicted as charged because a BB gun was not a "firearm" within the meaning of section 246. (*In re Jose A.* (1992) 5 Cal.App.4th 697, 702 [7 Cal.Rptr.2d 44].) Over defendant's objection, the court instead sustained the petition on the basis defendant had committed an assault with a deadly weapon (§ 245, subd. (a)(1)) which the court concluded was a lesser and necessarily included offense of discharging a firearm at an occupied vehicle (§ 246).

At the dispositional hearing the court continued wardship and placed defendant in a community camp program for a term of five years and two months.[4] This appeal followed.

### DISCUSSION

*Assault With a Deadly Weapon Is Not a Lesser and Necessarily Included Offense of Willfully and Maliciously Discharging a Firearm at an Occupied Vehicle.*

 Defendant contends the court committed reversible error by sustaining the petition on the basis the crime of assault with a deadly weapon was

---

[4]The five-year, two-month term consists of four years for the assault with a deadly weapon in the present petition, one year on a prior sustained petition for grand theft from May 1991 and two months on a October 1990 sustained petition for trespass at school.

a lesser and necessarily included offense of discharging a firearm at an occupied vehicle.

Our task in this case is a narrow one. We need not decide whether defendant's conduct satisfied the elements of an assault with a deadly weapon. Nor are we asked to decide whether a jury's verdict of guilt of an assault with a deadly weapon is supported by substantial evidence. Instead, our task is to determine whether in the abstract one can willfully and maliciously discharge a firearm at an occupied vehicle without also, and necessarily, committing an assault with a deadly weapon. If the answer is in the affirmative, the latter is not a lesser and necessarily included offense of willfully discharging a firearm at an occupied vehicle and defendant cannot be convicted of a related offense of which he had no notice and to which he did not consent. (*People* v. *Francis* (1969) 71 Cal.2d 66, 74-75 [75 Cal.Rptr. 199, 450 P.2d 591].)

██ "It is fundamental that 'When a defendant pleads not guilty, the court lacks jurisdiction to convict him of an offense that is neither charged nor necessarily included in the alleged crime. [Citations.] This reasoning rests upon a constitutional basis: "Due process of law requires that an accused be advised of the charges against him in order that he may have a reasonable opportunity to prepare and present his defense and not be taken by surprise by evidence offered at his trial." [Citation.]' (*People* v. *West* (1970) 3 Cal.3d 595, 612 [91 Cal.Rptr. 385, 477 P.2d 409].) As to a lesser included offense, the required notice is given when the specific language of the accusatory pleading adequately warns the defendant that the People will seek to prove the elements of the lesser offense. (*Ibid.*; *People* v. *Marshall* (1957) 48 Cal.2d 394, 405 [309 P.2d 456].) However, even when the charge does not so specify, the requisite notice is nonetheless afforded if the lesser offense is 'necessarily included' within the statutory definition of the charged offense; in such event conviction of the included offense is expressly authorized (§ 1159). In this connection we have said that ' " 'The test in this state of a necessarily included offense is simply that where an offense cannot be committed without necessarily committing another offense, the latter is a necessarily included offense.' " [Citations.]' (*People* v. *Pendleton* (1979) 25 Cal.3d 371, 382 [158 Cal.Rptr. 343, 599 P.2d 649].)" (*People* v. *Lohbauer* (1981) 29 Cal.3d 364, 368-369 [173 Cal.Rptr. 453, 627 P.2d 183].)

" '[D]ue process requires that a minor, like an adult, have adequate notice of the charge so that he may intelligently prepare his defense. (*In re Gault* (1967) 387 U.S. 1, 3. . . . [¶] 'But notice is adequate and due process is served when the trier of fact is permitted to find an accused guilty of an offense *necessarily included* in that with which he is charged [citation] *or* of

a lesser offense which, although not necessarily included in the statutory definition of the offense, is *expressly pleaded* in the charging allegations.' " (*In re Robert G.* (1982) 31 Cal.3d 437, 442-443 [182 Cal.Rptr. 644, 644 P.2d 837], italics in original, citing *In re Arthur N.* (1976) 16 Cal.3d 226, 233 [127 Cal.Rptr. 641, 545 P.2d 1345].)

Thus, where the statutory definition of the crime is stated in the accusatory pleading, the lesser offense is necessarily included if the legal elements constituting the offense charged cannot be committed without necessarily committing the legal elements of a lesser offense as defined by statute. (*People* v. *Francis*, *supra*, 71 Cal.2d 66, 73 ["to be necessarily included, the lesser offense must be 'part of the greater in fact' as well as being 'embraced within the legal definition of the greater as a part thereof.' "].)

■ The statutory definition of assault is an unlawful attempt, coupled with the present ability, to commit a violent injury on the person of another. (§ 240.) A person, as the target of the attempted unlawful use of force, is a necessary element of the crime of assault.

Section 246 may be violated in a variety of ways. One such violation occurs when a defendant "maliciously and willfully discharges a firearm at an inhabited dwelling house. . . ." However, that section provides "inhabited" means "currently being used for dwelling purposes, whether occupied or not." (§ 246.)

Based on the statutory definitions of the two crimes, it is apparent one can commit a violation of section 246 without committing an assault. A defendant may violate section 246 by discharging a firearm into an inhabited, but temporarily unoccupied dwelling. In that circumstance, there is no person present to be the target of the unlawful attack and the threat of injury or risk to human health and safety is lacking. Thus, while the gravamen of the crime of assault is the potential injury to the victim, not all violations of section 246 require persons or victims even be physically present. (See, e.g., *People* v. *Masters* (1987) 195 Cal.App.3d 1124, 1130 [241 Cal.Rptr. 511] [section 246 does not require a victim in the ordinary sense]; *Martin* v. *Hall* (1971) 20 Cal.App.3d 414 [97 Cal.Rptr. 730, 53 A.L.R.3d 719].) Consequently, under the statutory definitions assault with a deadly weapon is not a lesser and necessarily included offense of a violation of section 246.

■ Under the alternate test, where the accusatory pleading charges an offense by alleging specific acts committed by the accused in words sufficient to give notice of the offense of which he is accused, a lesser offense is necessarily included if its legal elements are within the acts specifically

charged. (*People* v. *Marshall* (1957) 48 Cal.2d 394, 399-407 [309 P.2d 456].)

As noted, an assault is an unlawful attempt, coupled with the present ability, to commit a violent injury on the person of another. (§ 240.) Or, as our Supreme Court has stated, an assault is "an attempt to commit a battery." (*People* v. *Rocha* (1971) 3 Cal.3d 893, 899 [92 Cal.Rptr. 172, 479 P.2d 372].) Battery, in turn, is defined as "any willful and unlawful use of force or violence upon the person of another." (§ 242.) The *Rocha* court determined the crime of assault with a deadly weapon was a general intent crime and the intent required for conviction was the "general intent to wilfully commit an act the direct, natural and probable consequences of which if successfully completed would be the injury to another." (3 Cal.3d at p. 899.) The *Rocha* court explained so long as that intent was demonstrated, it was immaterial whether the defendant intended to violate the law, knew the act was unlawful, intended to cause a particular or severe injury or whether or not the defendant intended to inflict bodily harm. (*Ibid.*) However, the court went on to clarify that to convict for an assault "[a] battery must be contemplated." (*People* v. *Rocha*, *supra*, 3 Cal.3d at p. 899, fn. 12.)

The intent required for a conviction of section 246 under the pleading in this case is the willful and malicious discharge of a firearm at the occupied vehicle. Section 7, subdivision 1 states "willfully . . . implies simply a purpose or willingness to commit the act . . . referred to. It does not require any intent to violate law, or to injure another, or to acquire any advantage." Subdivision 4 of that section defines "maliciously" as "a wish to vex, annoy, or injure another person, or an intent to do a wrongful act, established either by proof or presumption of law."

These terms were construed in the context of a prosecution under section 246 in *People* v. *Chavira* (1970) 3 Cal.App.3d 988 [83 Cal.Rptr. 851]. In that case the defendant verbally threatened one of a group of young men. Later that evening defendant fired shots at these men from the window of a car in which he was a passenger. The shots hit one of the men congregated on the driveway of a home. Defendant got out of the car and continued firing his gun at the group of young men. (*People* v. *Chavira*, *supra*, 3 Cal.App.3d at p. 991.) Defendant was convicted of several crimes, including a conviction for maliciously discharging a firearm at an inhabited dwelling. (§ 246.) On appeal the defendant claimed the evidence was insufficient to support the conviction of that charge because he aimed and shot "at" the persons on the driveway and not "at" the house. (*People* v. *Chavira*, *supra*, 3 Cal.App.3d at p. 992.) The Court of Appeal rejected this contention. "The jury was instructed that, to convict under section 246, the shooting must have been

with intent to hit the building. The contention is that the evidence did not meet the test of the instruction. We disagree. An act done with a reckless disregard of probable consequences is an act done with 'intent' to cause such result within the meaning of the words used in the instruction. Defendant and his associates, engaged in a fusillade of shots directed primarily at persons standing close to a dwelling. The jury was entitled to conclude that they were aware of the probability that some shots would hit the building and that they were consciously indifferent to that result. That is sufficient 'intent' to satisfy the statutory requirement." (*People* v. *Chavira, supra,* 3 Cal.App.3d at p. 993; see also *People* v. *Williams* (1980) 102 Cal.App.3d 1018 [162 Cal.Rptr. 748] [intent element satisfied by evidence defendant deliberately indifferent to probable consequences of hitting occupied vehicle].)

Under the *Chavira* decision, the intent element for a violation of section 246 is satisfied if a defendant intended to hit the car, without more. In other words, the gravamen of a section 246 violation is firing at the occupied vehicle.[5] While the potential for injury to persons is implied in the statutory requirement the vehicle be occupied, the probability of injury is not the primary focus of the crime unlike an assault with a deadly weapon. To violate section 246 in this context it is not strictly necessary for a human being to be the target of the assault or that defendant's acts demonstrate a conscious disregard for the life and safety of others. It is sufficient if the probable consequence of the defendant's acts is the shots fired will make contact with the occupied vehicle itself.

Stated another way, it is not necessary to a conviction of section 246 to prove the defendant's act came dangerously close to actually physically injuring a person. (Compare *People* v. *Rocha, supra,* 3 Cal.3d at p. 899

---

[5]Query whether a defendant could be found guilty of discharging a firearm at an occupied vehicle if as a matter of fact the defendant did not intend to harm any victim and he did not know, and there was no reasonable means of knowing, the vehicle was occupied. For example, would a defendant be guilty of a violation of section 246 if in the middle of the night he shot at various targets, including signs, rocks and the tires of a car he presumed was abandoned at the side of the road where it turned out the driver of the car was sleeping in the backseat? If it is not necessary to prove the defendant knew the vehicle was occupied for a conviction of section 246, it is clear an intended victim or the attempt to commit a battery would also not be required to violate that statute. If this is a proper construction of the acts proscribed by section 246, one could violate that section without even contemplating the presence of a person. However, even the most expansive interpretations of the intent required to commit an assault with a deadly weapon still require a defendant to be aware of the presence of potential victims. (See, e.g., *People* v. *Lathus* (1973) 35 Cal.App.3d 466 [110 Cal.Rptr. 921] [defendant claimed he saw no one near car parked on side of highway but facts indicated car was jacked up and two people were changing one of its tires]; *In re Brian F.* (1985) 167 Cal.App.3d 672 [213 Cal.Rptr. 195] [juvenile should have known he would run over the people fighting behind his car if he drove his car in reverse].)

[assault requires an "act, the direct, natural and probable consequences of which if successfully completed would be the injury to another."].) It is enough if the probable result of the defendant's willful act is some shots may make contact with any part of the car.

In addition, an assault with a deadly weapon requires the defendant have the present ability to commit a violent injury on the person of another. (§ 240.) In *People* v. *Valdez* (1985) 175 Cal.App.3d 103 [220 Cal.Rptr. 538] we defined "present ability" for purposes of assault with a deadly weapon to mean a defendant has both the means (an operative, real weapon) and is in a location (within striking distance) to inflict injury on his intended victim. (*People* v. *Valdez, supra,* 175 Cal.App.3d at pp. 112-113.)

This element of the offense of assault does not appear to be necessary to a conviction of maliciously discharging a firearm at an occupied vehicle. For example, in *People* v. *Buttles* (1990) 223 Cal.App.3d 1631 [273 Cal.Rptr. 397], the question on appeal was whether a tractor/trailer rig was an occupied vehicle for purposes of a violation of section 246. In *Buttles,* a motorist on the freeway reported to the police she saw defendant in another car fire a weapon at a passing tractor/trailer rig. The defendant was arrested and charged with a violation of section 246. The tractor was hauling two sand and gravel trailers and the driver testified he heard nothing and was unaware someone had fired shots at his rig. On appeal the defendant argued because he only fired at the trailer and not the tractor his conduct was not proscribed under section 246. The Court of Appeal disagreed and held ". . . when such a tractor/trailer rig is operated on a highway, it is an occupied motor vehicle within the meaning of that phrase as used in Penal Code section 246." (*People* v. *Buttles, supra,* 223 Cal.App.3d at p. 1638.)

If one can violate section 246 while discharging a firearm at a vehicle at a location beyond the reasonable range or striking distance of a human target, it appears one may violate section 246 without having the "present ability" to inflict an injury on the person of another.

In sum, the elements of the two crimes are not congruent. Although the manner in which the two crimes differ may be subtle, such differences are sufficient to find violations of section 246 by discharging a weapon at an occupied vehicle without also necessarily attempting to use unlawful force on the person of another. We therefore conclude assault with a deadly weapon is not necessarily included in the crime of willfully and maliciously discharging a firearm at an occupied vehicle.

This conclusion is supported by decisions reviewing the proper punishment when a defendant has been convicted of both an assault with a deadly

weapon as well as of a violation of section 246. If the assault with a deadly weapon was in fact a lesser, and necessarily included offense of section 246, a defendant could not have been convicted of both the greater and lesser crimes. (*People* v. *Cole* (1982) 31 Cal.3d 568, 582 [183 Cal.Rptr. 350, 645 P.2d 1182].) If assault with a deadly weapon was in fact a lesser and necessarily included offense of willfully discharging a firearm at an occupied vehicle the remedy on appeal would have been to reverse the lesser conviction. (*People* v. *Moran* (1970) 1 Cal.3d 755, 763 [83 Cal.Rptr. 411, 463 P.2d 763]; see also L. A. Super. Ct. Cal. Criminal Trial Judges' Benchbook (1988 ed.) ch. 13.Q, p. 596.38.)

Instead, these decisions analyze whether punishment for the conviction of section 246 should have been stayed under section 654.[6] For example, in *People* v. *Kane* (1985) 165 Cal.App.3d 480 [211 Cal.Rptr. 628] the defendant contended the concurrent terms imposed for possession of a firearm by a convicted felon (§ 12021) and of discharging a firearm at an occupied vehicle (§ 246) were barred by section 654's proscription of multiple punishment where he was also punished for assault with a deadly weapon (§ 245, subd. (a)) for the same acts involving the same person. The Court of Appeal agreed and stated: "The court imposed concurrent sentences when it should have stayed the terms imposed upon the less serious offenses of violation of sections 246 and 12021." (*People* v. *Kane, supra*, 165 Cal.App.3d at p. 488.)

In *People* v. *Masters, supra*, 195 Cal.App.3d 1124 the defendant pled guilty to one count of assault with a deadly weapon (§ 245, subd. (a)(2)) and to one count of willfully and maliciously discharging a firearm at an occupied vehicle based on firing a revolver at a car occupied by three rival gang members. The trial court issued a certificate of probable cause for appeal (§ 1237.5) on the issue whether section 654's prohibition against multiple punishment precluded the trial court from sentencing the defendant to a consecutive term for the section 246 violation without staying that term. The Court of Appeal agreed defendant's convictions comprised part of an indivisible course of conduct. However, the court concluded section 654 did not prevent multiple punishments in that case because there were multiple victims of defendant's conduct. (*People* v. *Masters, supra*, 195 Cal.App.3d at p. 1130.)

In *People* v. *Griggs* (1989) 216 Cal.App.3d 734 [265 Cal.Rptr. 53] the defendant discharged a firearm at a crowd leaving a concert. One of the

---

[6]Section 654 provides: "An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one; . . ."

shots hit a police officer's car. The defendant was convicted of an assault with a deadly weapon (§ 245, subd. (a)(2)), of carrying a concealed weapon on his person (§ 12025, subd. (b)) and of discharging a firearm at an occupied vehicle (§ 246). The Court of Appeal affirmed the conviction for assault with a deadly weapon, holding a named victim was not a necessary element of that crime. However, in an unpublished portion of that opinion the court stayed the punishment imposed for the conviction of section 246.

None of these cases analyzed the propriety of the multiple punishment in the context of the possibility an assault with a deadly weapon was a lesser and necessarily included offense of discharging a firearm at an occupied vehicle. Consequently these decisions reinforce the view those two crimes may be closely related but sufficiently different; the offense of discharging a firearm at an occupied vehicle can be committed without necessarily committing an assault with a deadly weapon and therefore a defendant may be properly convicted of both crimes based on the same course of conduct. (Cf. *People* v. *Cole*, *supra*, 31 Cal.3d at p. 582.)

Because the petition in this case was sustained on the basis defendant had committed a crime of which he had no notice and which was not necessarily included within the crime charged, due process requires his adjudication as a ward of the court on this petition be reversed. (*In re Robert G.*, *supra*, 31 Cal.3d 437, 445.)

### DISPOSITION

The adjudication pursuant to Welfare and Institutions Code section 602 is reversed.

Lillie, P. J., and Woods (Fred), J., concurred.